NO. 12-08-00459-CR

 

                         IN THE COURT OF
APPEALS         

 

            TWELFTH
COURT OF APPEALS DISTRICT

 

                                      TYLER, TEXAS

CHRIS
RANDALL COWGER,                         '                 APPEAL FROM THE 124TH

APPELLANT

 

V.                                                                         '                 JUDICIAL
DISTRICT COURT OF

 

THE STATE OF TEXAS,

APPELLEE                                                        '                 GREGG COUNTY,
TEXAS

                                                                                                


                                                      MEMORANDUM
OPINION

Appellant
Chris Randall Cowger appeals his conviction for felony driving while
intoxicated (DWI).  He raises five issues on appeal.  We affirm.

 

Background

Shortly
after midnight on October 30, 2007, Longview police officer Jason Hampton
observed Appellant driving away from a house that was a known narcotics
trafficking location. The house had been the site of at least twenty-five
felony arrests that had occurred over the two to three year period preceding
the arrest.  Officer Hampton stopped Appellant after seeing him commit two
traffic violations.  Appellant was upset because he had been stopped, and Officer
Hampton considered his behavior “erratic.”  The officer asked Appellant to step
out of his vehicle, and Appellant complied.  However, Appellant fumbled getting
his license out of his wallet and provided inconsistent details in explaining
why he possessed three different drivers licenses.  Officer Hampton suspected
that Appellant was intoxicated, and began conducting field sobriety tests.  He
checked for horizontal nystagmus, which he did not find.  Officer Hampton did
not detect any odor of alcohol coming from Appellant’s person, but he noticed
gold paint on Appellant’s knuckles.  Officer Hampton observed that, even though
the stop occurred at night, Appellant had fixed, “pinpointed” pupils, when
ordinarily a person’s pupils would have been dilated until presented with a
light source.  The officer asked Appellant to perform other field sobriety
tests requiring coordination, but decided not to proceed with them after
Appellant stated that he was disabled.  Therefore, Officer Hampton did not
conduct the walk and turn test or the one leg stand.  

Appellant
offered to give a breath sample, but refused to give a blood sample.  Based on
his observations of Appellant, the officer arrested Appellant.  Appellant was
indicted for felony DWI because he had two prior DWI convictions.  At trial,
the jury convicted Appellant of felony DWI and assessed four years of
imprisonment.

 

Impermissible
Comment on the Evidence

In
his first issue, Appellant challenges the portion of the jury charge
instructing the jury that it “may consider the Defendant’s refusal to submit to
a blood test, if he did, as evidence of intoxication in this case.”  Appellant
argues that this instruction was an impermissible comment on the weight of the
evidence. 

Standard
of Review

The
function of the jury charge is to inform the jury of the applicable law and to
guide the jury in its application of the law to the case that the jury must
decide.  Hutch v. State, 922 S.W.2d 166, 170 (Tex.
Crim. App. 1996).  Because judges are neutral arbiters in the Texas adversarial
system, the charge must not express any opinion as to the weight to be accorded
to the evidence.  See Tex. Code
Crim. Proc. Ann. art. 36.14 (Vernon 2007); Brown v. State,
122 S.W.3d 794, 797 (Tex. Crim. App. 2003).  When reviewing a jury charge, we
first determine whether error exists and, if error does exist, we address
whether the harm caused by the error warrants reversal.  Hutch,
922 S.W.2d at 170-71.

Applicable
Law

“A
person’s refusal of a request by an officer to submit to the taking of a
specimen of breath or blood . . . may be introduced into evidence at the
person’s trial.”  Tex. Transp. Code Ann.
§ 724.061 (Vernon 1999).  In the past, trial judges often instructed juries in
DWI trials using language similar to that in the statute.  This practice is now
prohibited by the holding of the Texas Court of Criminal Appeals “that a jury
instruction informing the jury that it may consider evidence of a refusal to
take a breath [or blood] test constitutes an impermissible comment on the
weight of the evidence.”  Bartlett v. State, 270 S.W.3d 147, 154
(Tex. Crim. App. 2008).  Of course, that evidence is still admissible, and the
jury may consider it.  See Tex.
Transp. Code Ann. § 724.061 (Vernon 1999). 

Where,
as here, a defendant does not object to the jury charge, reversible error
exists only if the record shows a defendant has suffered not only actual harm,
but egregious harm resulting from the incorrect charge.  Almanza v. State,
686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (establishing proper standard of
review for jury charge error in absence of objection to jury charge). 
Egregious harm arises if the error is so severe that it deprived the accused of
a fair and impartial trial.  Id.  In determining whether
egregious harm exists, we consider the following factors: (1) the entire jury
charge; (2) the state of the evidence; (3) the arguments of counsel; and (4)
any other relevant information in the record as a whole.  Id.;
see also Vargas v. State, 271 S.W.3d 338, 340 (Tex. App.–San Antonio
2008, no pet.) (applying egregious harm test to instruction at issue here). 
“Egregious harm is a difficult standard to prove and such determination must be
done on a case-by-case basis.” Hutch, 922 S.W.2d at 171.

Discussion

In
the charge in this case, the trial court instructed the jury that it “may
consider the [appellant’s] refusal to submit to a blood test, if he did, as
evidence of intoxication in this case.”  The trial court erred by including the
instruction in the jury charge. See Bartlett, 270 S.W.3d at 154. 
However, Appellant did not object to the submission of this instruction.
Therefore, to determine whether reversible error exists, we must determine
whether the inclusion of the instruction caused Appellant egregious harm.  See
Richardson v. State, 879 S.W.2d 874, 882 (Tex. Crim. App. 1993).

Examining
the jury charge itself, the instruction was two lines of the entire charge and
was not set out in a separately numbered paragraph.  The charge was otherwise
unobjectionable and contained common instructions and questions for a DWI case.
Furthermore, the charge did not reduce the State’s burden of proof.  See Hess
v. State, 224 S.W.3d 511, 516 (Tex. App.–Fort Worth 2007, pet. ref'd). 

            Second,
there was sufficient evidence to convict Appellant despite the erroneous
inclusion of the instruction in the charge.  Appellant was observed leaving a
known drug house shortly after midnight.  He fumbled with his wallet when
trying to retrieve his drivers license.  He made inconsistent statements
regarding his possession of three drivers licenses.  He claimed that he could
not perform the field sobriety tests because he was disabled.  But the State
introduced evidence that he was seen walking through the courthouse at a brisk
pace without difficulty and that he crossed a waist high plastic chain by
quickly lifting each of his legs over the chain.  His pupils were pinpointed
and not reactive to light.  Appellant admitted to taking 120 Vicodin pills and
240 methadone pills each month.  He also admitted that he had just taken two of
each shortly before the traffic stop. 

            As
to the third factor, the prosecutor argued as follows in closing argument:

 

The very next
line, you’re instructed that you may consider the defendant’s refusal to submit
[to] a blood test as evidence of intoxication in this case. You may consider
that. How much weight do you want to give it, that’s for you to decide. You can
find him guilty off [sic] this alone, all right? Why would he not give it? Is he
afraid of needles?

 

 

A refusal
to provide a specimen of blood is admissible evidence.  Tex. Transp. Code Ann. § 724.061.  Although a judge may
no longer instruct the jury on the refusal to provide a blood or breath
specimen, a comment by the prosecutor on the refusal is permissible.  Leija
v. State, No. 04-08-00679-CR, 2009 WL 331897, at *3 (Tex. App.–San
Antonio Feb.11, 2009, no pet.) (mem. op., not designated for publication)
(concluding that a prosecutor may still comment on a refusal to submit to a
breath or blood test in light of Bartlett); Vargas,
271 S.W.3d at 341 (same).  Further, the State may summarize evidence as part of
its jury argument, which includes the failure to submit to a breath or blood
test and that such failure is evidence of intoxication.  Leija,
2009 WL 331897, at *3; Vargas, 271 S.W.3d at 341.  Thus, the
State’s argument, insofar as it constitutes a comment on Appellant’s refusal to
submit to a blood test or a summary of the evidence, is proper.[1]

            After
considering the above factors and the evidence related to each factor as a
whole, we cannot conclude that the charge error was so severe that it deprived
Appellant of a fair and impartial trial.  Accordingly, we hold that the
inclusion of the instruction in the jury charge does not amount to egregious
harm.  

We
overrule Appellant’s first issue. 

 

Undisclosed
Witness

            In
his third issue, Appellant contends that the trial court erred in allowing the
testimony of Deputy Yvette Roth, whom the State had not listed as a potential
witness, without granting a continuance.

Standard
of Review

The
standard of review where a witness not included on a witness list is permitted
to testify is whether the trial court abused its discretion in allowing the
testimony.  See Martinez v. State, 867 S.W.2d 30, 39 (Tex. Crim.
App. 1993); Stoker v. State, 788 S.W.2d 1, 15 (Tex. Crim. App.
1989).  The burden to show that the trial court abused its discretion is on the
appellant.  See Depena v. State, 148 S.W.3d 461, 467 (Tex. App–Corpus
Christi 2004, no pet.).  Unless the appellant makes the necessary showing, the
trial court’s decision to allow the testimony will not be disturbed on appeal. 
See id.; Castaneda v. State, 28 S.W.3d 216, 223 (Tex.
App.–El Paso 2000, pet. ref’d).

Facts

Before
making his opening statement, the prosecutor announced the following: 

 

This just came
to the State’s attention yesterday afternoon, . . . the defendant exited the
courthouse, he was witnessed by Yvette Roth of courthouse security, as well as
Joe Nolley of courthouse security, neither one of these people were on our witness
list at the time we picked the panel, but it has come to our attention that
they saw the defendant, they saw him moving, and that is an issue in our case
because the defendant claims disability. And he apparently was not moving with
disability, and we would ask to call them as witnesses.

 

 

Appellant’s
counsel objected because those witnesses were not disclosed on the witness
list.[2]  Appellant’s
counsel also stated that “[i]f the court does allow those witnesses to testify
as to my client’s disability, then I would ask the court for a continuance so I
can subpoena my client’s doctor to be able to rebut that evidence, your
honor.”  The trial court overruled the objection, denied the continuance, and
allowed the testimony.  

The
State called Deputy Roth, but not Deputy Nolley.  Deputy Roth testified that
she saw Appellant walking through the courthouse at a brisk pace without
difficulty and that he crossed a waist high plastic chain by quickly lifting
each of his legs over the chain.  The purpose of this testimony was to rebut
Appellant’s claim of disability.  During her testimony, Deputy Roth mentioned
that she had seen Appellant not only the day before trial, but had also seen
him cross the chain without difficulty several months prior to his trial.  

Applicable
Law

There
is no general constitutional right to discovery in a criminal case.  Weatherford
v. Bursey, 429 U.S. 545, 559, 97 S. Ct. 837, 846, 51 L. Ed. 2d 30
(1977).  “Although the Due Process Clause confers upon defendants a right to be
informed about the existence of exculpatory evidence, it does not require the
prosecution to ‘reveal before trial the names of all witnesses who will testify
unfavorably.’ ” Ex parte Pruett, 207 S.W.3d 767, 767 (Tex. Crim.
App. 2005) (quoting Weatherford, 429 U.S. at 559, 97 S. Ct. at
845).  The code of criminal procedure affords a defendant the right to limited
discovery.  See Tex. Code Crim.
Proc. Ann. art. 39.14 (Vernon Supp. 2009); Badillo v. State,
255 S.W.3d 125, 130 (Tex. App.–San Antonio 2008, no pet.).  However, the code
“does not mandate disclosure of witnesses generally but only of expert
witnesses and then only when ordered by the court.”  Badillo, 255
S.W.3d at 130.  In other words, nonexpert witnesses need not be disclosed and
any list voluntarily provided by the state need not be supplemented unless the
trial court ordered it. See id.

In
determining whether the trial court abused its discretion by allowing the
testimony of an unlisted witness, we consider 1) whether the state acted in bad
faith in failing to provide the defense with the name of the witness and 2)
whether the defendant could reasonably anticipate that the witness would
testify despite the state’s failure to disclose the witness’s name.  See Wood
v. State, 18 S.W.3d 642, 649-50 (Tex. Crim. App. 2000); Nobles v.
State, 843 S.W.2d 503, 514-15 (Tex. Crim. App. 1992).  A lack of bad
faith alone will support a trial court’s ruling allowing an unlisted witness to
testify.  Campbell v. State, 900 S.W.2d 763, 772 (Tex. App.–Waco
1995, no pet.).

In
determining whether the state acted in bad faith, we ask whether 1) the
defendant established that the state intended to deceive him, 2) the state’s
notice left the defendant adequate time to prepare, and 3) the state freely
provided the defendant with information by maintaining an open file policy,
providing updated witness lists, or promptly notifying the defendant of new
witnesses.  Hardin v. State, 20 S.W.3d 84, 88 (Tex. App.–Texarkana
2000, pet. ref'd). Similarly, in determining whether the defense could have
anticipated the state’s witness, we look to 1) the degree of surprise to the defendant,
2) the degree of disadvantage inherent in that surprise, and 3) the degree to
which the trial court was able to remedy that surprise (e.g., by granting the
defense a recess, postponement, or continuance).  Id. at 88-89.

Bad
Faith

By
overruling Appellant’s objection, denying his request for a continuance, and
allowing Deputy Roth’s testimony, the trial court implicitly found that the
State did not act in bad faith and had no intent to deceive Appellant.  See
Campbell v. State, 900 S.W.2d 763, 772 (Tex. App.–Waco 1995, no
pet.) (where trial court allowed testimony of unlisted witness and denied continuance
to subpoena rebuttal witnesses, trial court impliedly found state did not act
in bad faith); see also Castaneda v. State, 28 S.W.3d 216,
223 (Tex. App.–El Paso 2000, pet. ref’d) (same).  

On
appeal, Appellant implicitly argues that the State acted in bad faith when it
failed to include Deputy Roth’s name on its witness list.  As support, he
contends that Deputy Roth’s statement that she had seen him several months
before indicated that the State knew the substance of Deputy Roth’s testimony
before the trial but failed to disclose it.  However, Deputy Roth’s prior
observation of Appellant, standing alone, does not support this conclusion. 
Moreover, Appellant did not assert to the trial court that the State intended
to deceive him by failing to list the proposed witness.  Nor did Appellant
point to any prior discovery violations by the State.  Instead, he requested a
continuance to subpoena his doctor to rebut the proposed testimony.  Because the
continuance was denied, Appellant had insufficient time to subpoena his doctor
and was left with cross examination as his sole means of defending against
Deputy Roth’s testimony. 

Of
the three bad faith elements, the second—inadequate time to prepare—is the only
one that weighs in Appellant’s favor.  As to the remaining elements, the record
does not indicate that the State intended to deceive Appellant by not listing
Deputy Roth as a witness or that it had previously failed to comply with the
trial court’s discovery order.  Consequently, we conclude that the record
supports the trial court’s implied finding that the State did not act in bad
faith.  

Reasonable
Anticipation of the Testimony

Appellant
first learned of the witness on the day the trial began.  Therefore, Deputy
Roth’s testimony appears to have been a surprise to both sides. See Franks
v. State, 90 S.W.3d 771, 809 (Tex. App.–Fort Worth 2002, no pet.). Since
this is a DWI case based primarily on the observations of the arresting
officer, the credibility of the parties and witnesses was a key element of the
trial. Deputy Roth’s testimony undermined Appellant’s credibility, because it
tended to establish that Appellant was not truthful as to the existence or
extent of his disability.  Appellant acknowledges that his statements to
Officer Hampton regarding his disability made his disability a significant
issue at trial.  Consequently, he should reasonably have anticipated that the
State would attempt to discredit his statements.  However, the record does not
contradict his assertion that the State’s disclosure of Deputy Roth as a
witness resulted in a high degree of surprise.  Furthermore, Appellant had
insufficient time to subpoena his doctor to provide expert testimony about his
disability.  Although we cannot speculate about how effectively his doctor may
have countered Deputy Roth’s testimony, we agree that Appellant’s inability to
subpoena him was disadvantageous to Appellant.  He asked for a continuance,
which was denied.  Thus, the trial court did not attempt to remedy the
surprise.  Consequently, the second factor of the test–the foreseeability
component–weighs in Appellant’s favor. 

However,
in any event, as discussed above, a lack of bad faith alone will support a
trial court’s ruling allowing an unlisted witness to testify.  Campbell,
900 S.W.2d at 772.  We have determined that the record supports the trial
court’s implied finding that the State did not act in bad faith.  Therefore, we
cannot conclude on the record before us that the trial court abused its
discretion in allowing Roth’s testimony without granting the continuance requested
by Appellant. 

We
overrule Appellant’s third issue.

 

Ineffective
Assistance of Counsel

In
his second issue, Appellant contends that trial counsel was ineffective because
he 1) failed to subpoena Appellant’s doctor to rebut the testimony that
Appellant had sufficient mobility to perform the sobriety tests, 2) failed to
object to the court’s submission of the instruction regarding Appellant’s
failure to submit to a blood test, and 3) failed to object to the State’s jury
argument on the submission of the instruction. 

Standard
of Review

To
establish ineffective assistance of counsel, a defendant must show both that trial
counsel’s performance was deficient and that the deficient performance
prejudiced him.  Strickland v. Washington, 466 U.S. 668, 694, 104
S. Ct. 2052, 2068, 80 L. Ed. 2d 674 (1984); Bone v. State, 77
S.W.3d 828, 833 (Tex. Crim. App. 2002).  The defendant bears the burden of
proving ineffective assistance by a preponderance of the evidence.  Ex
parte Chandler, 182 S.W.3d 350, 354 (Tex. Crim. App. 2005); Bone,
77 S.W.3d at 833.

To
show deficient performance, a defendant must show that counsel’s performance
fell below an objective standard of reasonableness.  Thompson v. State,
9 S.W.3d 808, 812 (Tex. Crim. App. 1999).  We presume trial counsel acted
within the proper range of reasonable and professional assistance and that his
trial decisions were based on sound strategy.  Salinas v. State,
163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (citing Mallett v. State,
65 S.W.3d 59, 63 (Tex. Crim. App. 2001)). To overcome this presumption, “any
allegation of ineffectiveness must be firmly founded in the record, and the
record must affirmatively demonstrate the alleged ineffectiveness.”  Thompson,
9 S.W.3d at 814 (quoting McFarland v. State, 928 S.W.2d 482, 500
(Tex. Crim. App.1996), cert. denied, 519 U.S. 1119, 117 S. Ct. 966, 136
L. Ed. 2d 851 (1997), abrogated on other grounds, Mosley v. State,
983 S.W.2d 249 (Tex. Crim. App. 1998)).  We will not speculate as to the basis
for counsel’s actions; thus a record that is silent on the reasoning behind
counsel's actions is sufficient to deny relief.  Stults v. State,
23 S.W.3d 198, 208 (Tex. App.–Houston [14th Dist.] 2000, pet. ref'd); see
Rylander v. State, 101 S.W.3d 107, 110-11 (Tex. Crim. App. 2003).


To
show he was prejudiced by counsel’s deficient performance, a defendant must
demonstrate there is a reasonable probability that, but for his counsel's
unprofessional errors, the result of the proceeding would have been different. 
Mitchell v. State, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002). 
Failure to prove either deficient performance or prejudice is fatal to any
complaint of ineffective assistance.  Strickland, 466 U.S. at
700, 104 S. Ct. 2052.  The standard for reviewing trial counsel’s performance
“has never been interpreted to mean that the accused is entitled to errorless
or perfect counsel.”  Ex parte Welborn, 785 S.W.2d 391, 393 (Tex.
Crim. App. 1990).

Discussion

Appellant
argues that his trial counsel was ineffective in “failing to subpoena
Appellant’s doctor as a rebuttal witness and failing to object to the Court’s
instruction that the jury may consider the Appellant’s refusal to submit to a
blood test . . . as evidence of intoxication, and further failing to object to
the Prosecutor’s closing argument.”      

Rule
38.1(i) of the Texas Rules of Appellate Procedure provides that an appellate
brief must contain “a clear and concise argument for the contentions made, with
appropriate citations to authorities and to the record.”  Tex. R. App. P. 38.1(i) (formerly Tex. R. App. P. 38.1(h)).  When an
appellant does not adequately comply with rule 38.1(i), nothing is presented
for appellate review.  See State v. Gonzalez, 855 S.W.2d
692, 697 (Tex. Crim. App. 1993); Nguyen v. State, 177 S.W.3d 659,
669 (Tex. App.-Houston [1st Dist.] 2005, pet. ref'd).  Here, with regard to Appellant’s
contentions that his trial counsel was ineffective in “failing to subpoena
Appellant’s doctor as a rebuttal witness” and “failing to object to the
Prosecutor’s closing argument,” Appellant provides only bare allegations, with no
substantive analysis of how these failures might equate to ineffective
assistance.  Therefore, Appellant waived those arguments.  See Tex. R. App. P. 38.1(i)

In
regard to Appellant’s complaint about his trial counsel’s failure to object to
the jury instruction pertaining to his failure to submit to a blood test, it
was unclear prior to Bartlett that the submission of such an
instruction was improper.  See, e.g., Smith v. State, 8 S.W.3d
450, 451 (Tex. App.–Waco 1999, no pet.) (finding no error in a similar charge);
Finley v. State, 809 S.W.2d 909, 913 (Tex. App.–Houston [14th
Dist.] 1991, pet. ref’d) (concluding that “[i]t is inconceivable that the
legislature would provide that such evidence is admissible and at the same time
contemplate that the jury should be instructed not to consider it as evidence
of guilt”); but see Hess v. State, 224 S.W.3d 511, 515 (Tex. App.–Fort
Worth 2007, pet. ref'd) (holding that an instruction such as the one here is an
impermissible comment on the evidence).  Bartlett was not decided
until after Appellant perfected his appeal. See Bartlett, 270
S.W.3d at 147.  Thus, Appellant’s trial counsel’s failure to object to the
instruction does not constitute deficient conduct, and Appellant has not met
the first prong of Strickland.  Even if he had, there is
no evidence in the record that Appellant was prejudiced by counsel’s
performance.  

We
overrule Appellant’s second issue.

 

Legal
and Factual Sufficiency of the Evidence

            In
his fourth issue, Appellant challenges the legal and factual sufficiency of the
evidence to support the verdict.

Standard
of Review 

In
reviewing the legal sufficiency of the evidence to support a conviction, we
view all of the evidence in the light most favorable to the prosecution in
order to determine whether any rational trier of fact could have found the
essential elements of the offense beyond a reasonable doubt.  Jackson v.
Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560
(1979); LaCour v. State, 8 S.W.3d 670, 671 (Tex. Crim. App.
2000).  The jury is the sole judge of the credibility of witnesses and of the
weight to be given their testimony.  Barnes v. State, 876 S.W.2d
316, 321 (Tex. Crim. App. 1994).  Any reconciliation of conflicts and
contradictions in the evidence is entirely within the jury's domain.  Losada
v. State, 721 S.W.2d 305, 309 (Tex. Crim. App. 1986).  Likewise, it is
the responsibility of the jury to weigh the evidence and draw reasonable
inferences from basic facts to ultimate facts. Jackson, 443 U.S.
at 319, 99 S. Ct. at 2789.

When
reviewing the factual sufficiency of the evidence to support a conviction, we
view the evidence in a neutral light and ask whether the evidence supporting
the verdict is so weak or so against the great weight and preponderance of the
evidence as to render the verdict manifestly unjust.  Steadman v. State,
280 S.W.3d 242, 246 (Tex. Crim. App. 2009).  In conducting a factual
sufficiency review, we must discuss the evidence that, according to the
appellant, most undermines the jury's verdict.  Sims v. State, 99
S.W.3d 600, 603 (Tex. Crim. App. 2003).  Although we are authorized to disagree
with the jury's determination to a very limited degree, we must nevertheless
give the jury's verdict a great degree of deference.  Steadman,
280 S.W.3d at 246.  Our evaluation should not substantially intrude upon the
jury's role as the sole judge of the weight and credibility of witness
testimony.  Santellan v. State, 939 S.W.2d 155, 164 (Tex. Crim.
App. 1997); see Clewis v. State, 922 S.W.2d 126, 133 (Tex. Crim.
App. 1996).

 

Applicable
Law

A
person commits the crime of DWI if he “is intoxicated while operating a motor
vehicle.”  Tex. Penal Code Ann. §
49.04(a) (Vernon 2003).  The elements of that crime are that 1) the defendant,
2) operated, 3) a motor vehicle, 4) while intoxicated, and 5) on or about the
date alleged in the State's charging instrument. Id.; see also
Paschall v. State, 285 S.W.3d 166, 174 (Tex. App.–Fort Worth 2009,
pet. ref’d).  In a felony DWI case, the state must also prove that the accused
has twice previously, and sequentially, been convicted of DWI.  Tex. Penal Code Ann. § 49.09(b)(2)
(Vernon 2003); Paschall, 285 S.W.3d at 174. 

“Intoxicated”
means “not having the normal use of mental or physical faculties by reason of
the introduction of alcohol, a controlled substance, a drug, a dangerous drug,
a combination of two or more of those substances, or any other substance into
the body.”  Tex. Penal Code Ann.
§ 49.01(2)(A).  The opinion testimony of the arresting officer alone is
legally sufficient to support a finding of intoxication.  See Annis
v. State, 578 S.W.2d 406, 407 (Tex. Crim. App. [Panel Op.] 1979); Crawford
v. State, 643 S.W.2d 178, 180 (Tex. App.–Tyler 1982, no pet.).  The
only disputed element in this case is whether there is sufficient evidence to
demonstrate that Appellant was intoxicated.

Legal
Sufficiency

Officer
Hampton testified that, shortly after midnight, he observed Appellant leaving a
known drug house where more than twenty-five felony arrests had been made over
the preceding two to three years.  Officer Hampton stopped Appellant after
seeing him commit two traffic violations.  The officer testified that upon interviewing
Appellant, he suspected intoxication because the Appellant acted “erratically,”
fumbled for his drivers license, and gave inconsistent stories about why he had
three drivers licenses.  While searching Appellant’s vehicle, Officer Hampton
discovered an “old” beer.  He asked Appellant to perform field sobriety tests,
but Appellant responded that he was disabled.  Consequently, Officer Hampton
had Appellant perform a horizontal nystagmus test,[3]
which in his opinion, showed that Appellant was likely not intoxicated from
alcohol.  However, the officer noticed that Appellant’s pupils were fixed,
pinpointed, and not reactive to light.  This led him to believe that Appellant
was intoxicated from a substance other than alcohol, because normally a
person’s pupils would constrict when presented with a light source and dilate
in the absence of a light source at night.  Officer Hampton noticed gold paint
residue on Appellant’s hands and knuckles, which, according to his training and
experience, indicated inhalant abuse. Appellant offered to provide a breath
specimen, but refused to submit to a blood test.  Appellant admitted to taking
120 Vicodin pills and 240 methadone pills each month.  He admitted taking two
Vicodin pills and two methadone pills shortly before his arrest, and stated
that the pills make him “kind of ‘stupid’ for about an hour” after he takes
them.  Officer Hampton testified that, in his opinion, Appellant was
intoxicated.  Viewing the evidence in the light most favorable to the verdict,
we conclude that the evidence is legally sufficient to support the verdict.

Factual
Sufficiency

            Appellant
argues that no physical evidence of intoxication was presented to the jury. 
Specifically, Appellant argues that nystagmus was not present, other field
sobriety tests were not performed due to Appellant’s claim of disability, a
search of Appellant and his vehicle revealed no drugs, Appellant did not slur
his speech or stagger, and the reason for the gold paint residue on his hands
was that he had just painted his bumper.  However, Officer Hampton testified
that he believed Appellant was intoxicated based on his observations, and
relayed those observations to the jury. Appellant admitted on the videotape that
he took two Vicodin pills and two methadone pills prior to the traffic stop.  He
also admitted the deleterious effect the pills had on him.  When there is
conflicting evidence, the jury’s resolution of the conflicts is generally
regarded as conclusive.  Van Zandt v. State, 932 S.W.2d 88, 96
(Tex. App.–El Paso 1996, pet. ref’d).  Here, the jury resolved the conflicts in
favor of the State, which it was authorized to do.  Cain v. State,
958 S.W.2d 404, 409-10 (Tex. Crim. App. 1997).  Having reviewed the record in
its entirety, with consideration given to all the evidence, both for and
against the trial court’s finding, we cannot say that the proof of guilt is so
obviously weak or otherwise so greatly outweighed by contrary proof as to
render Appellant’s conviction clearly wrong or manifestly unjust.  Therefore,
we hold that the evidence is factually sufficient to support the trial court’s
judgment. 

Appellant’s
fourth issue is overruled.

 

Excessive
Sentence

            In
his fifth issue, Appellant contends that his sentence is excessive under the
Eighth Amendment to the United States Constitution.

Appellant
was convicted of DWI with two prior convictions of the same offense, a third
degree felony.  See Tex. Penal
Code Ann. §§ 49.04(a), 49.09(b)(2) (Vernon 2003).  The punishment for
such an offense is a term of imprisonment between two and ten years.  Id. § 12.34.  The jury assessed punishment at four years,
which falls within the range set forth by the Texas Legislature.  Therefore,
the punishment is not prohibited as cruel, unusual, or excessive per se.  See
Harris v. State, 656 S.W.2d 481, 486 (Tex. Crim. App. 1983); Jordan
v. State, 495 S.W.2d 949, 952 (Tex. Crim. App. 1973).

Appellant
concedes that his punishment is within the statutory range, but he contends it
is grossly disproportionate to the facts of this case in violation of the
Eighth Amendment.  See U.S.
Const. amend. VIII; Solem v. Helm, 463 U.S. 277, 290, 103
S. Ct. 3001, 3009, 77 L. Ed. 2d 637 (1983).  The proportionality of a sentence
is evaluated by considering 1) the gravity of the offense and the harshness of
the penalty, 2) the sentences imposed on other criminals in the same
jurisdiction, and 3) the sentences imposed for commission of the same crime in
other jurisdictions.  Solem, 463 U.S. at 292, 103 S. Ct. at
3011.  Unless Appellant establishes that his sentence is grossly
disproportionate to his crime, we need not address the second and third
criteria set out in Solem.  See McGruder v. Puckett,
954 F.2d 313, 316 (5th Cir.1992); see also Robertson v. State,
245 S.W.3d 545, 549 (Tex. App.–Tyler 2007, pet. ref’d). 

In
determining whether Appellant’s sentence is grossly disproportionate, we are
guided by the holding in Rummel v. Estelle, 445 U.S. 263, 100 S. Ct.
1133, 63 L.Ed.2d 382 (1980).  After considering the facts of the instant case
in light of Rummel, we conclude that Appellant’s sentence was not
unconstitutionally disproportionate.  See id., 445 U.S. at 266,
100 S. Ct. at 1134-35 (holding that life sentence is not cruel and unusual
punishment for obtaining $120.75 by false pretenses where appellant had a prior
felony conviction for fraudulent use of credit card to obtain $80.00 worth of
goods or services and another for passing a forged check in amount of $28.36). 
Absent a threshold showing of disproportionality, we need not address the
second and third Solem criteria.  Therefore, we cannot conclude
that Appellant’s sentence constituted cruel and unusual punishment. 

Appellant’s
fifth issue is overruled.

 

Disposition

            We
affirm the judgment of the trial court. 

 

 

                                                                                                Sam Griffith

                                                                                                      
Justice

 

 

 

Opinion
delivered January 29, 2010.

Panel
consisted of Worthen, C.J., Griffith, J., and Hoyle, J.

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

 

(DO NOT PUBLIS


 
 
 
 
 
 
 
  
 
 
 
 
 
  
 


H)









[1] We express no
opinion about whether the prosecutor correctly stated the law when he, without
objection from Appellant, informed the jury that it could find Appellant guilty
based solely on his failure to submit to a blood test.  However, we will assume
for the purpose of our harm analysis that the prosecutor misstated the law.
Under this assumption, the impact of the misstatement was adequately mitigated
by the prosecutor’s preceding comment that the jury could decide for itself how
much weight to give Appellant’s failure submit to a blood test. 





[2] The trial
court granted Appellant’s “Motion for Witness List” and “Motion for
Discovery,” thereby requiring disclosure of the State’s witnesses and
supplementation of the list as necessary. 





[3] Officer
Hampton also required Appellant to perform the vertical gaze nystagmus test,
but the reliability of that test has been questioned.  See Stovall v.
State, 140 S.W.3d 712, 718 (Tex. App.—Tyler 2004, no pet.).