NUMBER 13-03-00014-CR

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG




DARCY JULIO DEPENA,                                                             Appellant,

v.

THE STATE OF TEXAS,                                                                Appellee.




On appeal from the 319th District Court of Nueces County, Texas.




O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Baird



Opinion by Justice Baird

          Appellant was charged by indictment with the offense of aggravated assault. A jury
convicted appellant of the charged offense, and assessed punishment at ten years
confinement in the Texas Department of Criminal Justice–Institutional Division, and a fine
of $10,000. We affirm the judgment of the trial court.
I. Failure to Disclose Witness.
          The first point of error contends the trial judge erred in permitting an expert witness
to testify during the State’s rebuttal case. Specifically, appellant argues Dr. Keith Rose
should not have been permitted to testify as an expert witness without prior notice to
appellant. The State advances several arguments as to why the trial judge did not err in
admitting Dr. Rose’s testimony.
A. Factual Summary.
          Prior to trial, appellant filed a discovery motion seeking, inter alia, a list of the State’s
expert witnesses. Specifically, the motion sought “[t]he name, address, and telephone
number of any expert witness who may testify for the State either on guilt or innocence or
punishment phase of the trial.” Under this portion of the motion, the word “granted” is
circled, and “agreed” is written. However, the order granting the motion was not signed.


 
The State complied with this ruling by filing its notice of expert witnesses, listing eleven
possible expert witnesses. Dr. Rose was not on the list. Appellant filed his notice of expert
witnesses, listing only James L. Booker, Ph.D. 
          During its case-in-chief, the defense called Dr. Booker, a toxicologist. The purpose
of this testimony was to raise the defense of involuntary intoxication. Tex. Pen. Code Ann.
§ 8.04 (Vernon 2003). Dr. Booker testified that he examined the results of a drug screen
of appellant’s blood which was drawn at 2:00 p.m. on December 31, 2000. The alleged
offense occurred thirty-six hours earlier at approximately 2:30 a.m. on December 30, 2000.
The sample tested positive for benzodiazepines, a mood altering “class of compounds.” 
Benzodiazepines alters the mental abilities of the individual by causing confusion and
memory loss. However, benzodiazepines do not affect one’s physical abilities. When
taken in combination with alcohol, benzodiazepines could produce unpredictable
”exaggerated emotional responses” which would lead to anger and violence. This is also
known as “paradoxical rage.” A characteristic of benzodiazepines is severe memory loss.
Another side effect is urinary retention. Rohipnol is one form of benzodiazepines.



          Prior to Booker’s testimony, appellant and others testified that appellant exhibited
these side effects on the date of the alleged offense. Specifically, appellant testified that
on the night of the alleged offense, he had a headache and took two pills which he
believed to be Excedrin. The pills were provided by Chris Caldwell, the owner of the home
where this incident occurred. Early the next morning, shortly after 2:00 a.m., Caldwell gave
appellant two more pills. Appellant took the pills and sat at the kitchen counter with the
complainant on his lap, and that is the last thing appellant remembered before the alleged
offense. The next thing he remembered was being awakened in the guestroom of his
parent’s home. Appellant’s father, a surgeon, suggested that appellant have a drug
screen. On December 30, the night of the alleged offense, at approximately 8:30 p.m,
appellant went to the Calallen Minor Emergency Clinic where he attempted to give a urine
sample. However, appellant was unable to urinate. The following day, December 31,
appellant provided the blood sample which was the subject of Booker’s testimony. He also
returned to the clinic and gave a urine specimen.
          To rebut the defense of involuntary intoxication, the State called Dr. Rose, the owner
of Calallen Minor Emergency Clinic, first visited by appellant on the night of December 30,
the date of the alleged offense, one day before giving the blood sample analyzed by
Booker. Dr. Rose testified appellant provided a urine sample on December 30 which
tested negative for benzodiazepines. Medical records were introduced to corroborate Dr.
Rose’s testimony. There was no indication from these records that appellant was unable
to urinate on December 30. Dr. Rose testified it was not possible for the urine test to be
negative and the blood sample examined by Dr. Booker to be positive unless appellant had
ingested the drug between the two tests. 
B. Preservation of Issue for Appellate Review.
          As noted above, appellant’s pretrial discovery motion was not signed by the trial
judge. The State argues that because the trial judge did not sign the order, appellant failed
to obtain a ruling on the motions, and the issue is not preserved for appellate review. We
reject this argument for two reasons. First, both parties complied with the notations on the
motion as if the trial judge had signed the order granting same. Specifically, the State filed
the “State’s Notice of Expert Witnesses,” stating the notice was given “in reply to
Defendant’s request of said notice.” Second, when objecting to Dr. Rose’s testimony,
defense counsel stated: “The Court ordered the State to disclose expert witnesses . . .
[T]he court ordered us to disclose experts.” These statements were not objected to by the
State, or qualified by the trial judge. Therefore, we will consider them as correct assertions
that the discovery motion was granted, even though the order was not signed. Yarbrough
v. State, 947 S.W.2d 892, 895 (Tex.Crim.App. 1997) (“A counsel's statement about an
occurrence in the courtroom, which was made for the purposes of the record, recorded by
the court reporter, undisputed by the opposing counsel, and unquestioned and unqualified
by the judge in whose presence the statement was made, establishes the occurrence for
purposes of the appellate record.”) (citing Hicks v. State, 525 S.W.2d 177 (Tex. Crim. App.
1975)); Pitts v. State, 916 S.W.2d 507, 510 (Tex. Crim. App. 1996) ("This Court accepts
as true factual assertions made by counsel which are not disputed by opposing counsel.");
Resanovich v. State, 906 S.W.2d 40, 42 (Tex. Crim. App. 1995) ("Because there were no
objections made by to the State's undisputed observations, we hold that those
observations constitute valid proof in support of the State's submission."); Emerson v.
State, 820 S.W.2d 802, 804 (Tex. Crim. App. 1991) ("Because there were no objections
made [by the State] to appellant's undisputed observations, we hold that those
observations constitute valid proof in support of appellant's prima facie case."). 
Accordingly, we hold this issue is preserved for our review.
C. The State’s Duty to Disclose Witnesses.
          Our law is clear that upon request by the defense, the State must disclose the
witnesses who will be used at any stage of the trial. Stoker v. State, 788 S.W.2d 1, 15
(Tex. Crim. App. 1989); Beets v. State, 767 S.W.2d 711, 747 (Tex. Crim. App. 1987) (citing
Young v. State, 547 S.W.2d 23, 27 (Tex. Crim. App. 1977)). In the context of expert
witnesses, this common law duty has been codified by statute, and has been extended to
criminal defendants. Tex. Code Crim. Proc. Ann. art. 39.14(b) (Vernon Supp. 2004).


 
Therefore, we hold the State had a duty to disclose Dr. Rose as a witness.
          Nevertheless, the State argues they were not required to disclose Dr. Rose as a
witness because: (a) he was called in rebuttal; and, (b) there was no time for disclosure. 
We will address these arguments seriatim.
1. Rebuttal.
          Despite the "at any stage of the trial" language found in the cases cited above, the
court of criminal appeals has held the State is not required to disclose the identity of
rebuttal witnesses. Elkins v. State, 543 S.W.2d 648, 649 (Tex. Crim. App. 1976);
Hoagland v. State, 494 S.W.2d 186, 189 (Tex. Crim. App. 1973). The rationale for this
proposition is that evidence offered in rebuttal cannot be foreseen because the State does
not know what theories the defendant will advance at trial. Hoagland, 494 S.W.2d at 188-89. However, this rationale has not been tested in the context of article 39.14(b) which
provides:
On motion of a party and on notice to the other parties, the court in which an
action is pending may order one or more of the other parties to disclose to
the party making the motion the name and address of each person the other
party may use at trial to present evidence under Rules 702, 703, and 705,
Texas Rules of Evidence. The court shall specify in the order the time and
manner in which the other party must make the disclosure to the moving
party, but in specifying the time in which the other party shall make
disclosure the court shall require the other party to make the disclosure not
later than the 20th day before the date the trial begins.

Tex. Code Crim. Proc. Ann. art. 39.14(b) (Vernon Supp. 2004).

          We are required to apply the "literal text” of this statute unless doing so would lead
to an absurd result. Boykin v. State, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). Article
39.14(b) does not exempt rebuttal witnesses, and we are not at liberty to engraft such an
exemption into the statute. Henderson v. State, 962 S.W.2d 544, 551-53 (Tex. Crim. App.
1997). The reason the legislature did not make an exception for rebuttal witnesses is
readily apparent – many times the expert’s testimony is not relevant unless and until the
defendant has raised a defense which requires expert testimony to rebut. The most
obvious example of this is in the insanity defense. The State has no burden to establish
the defendant’s sanity at the time of the commission of the alleged offense. Riley v. State,
830 S.W.2d 584, 585 (Tex. Crim. App. 1992) (“As a general rule the State has no
obligation to bring forward evidence which establishes the defendant was sane at the time
of the commission of the alleged offense.”). Therefore, only after the insanity defense has
been raised by the defense may the State rebut it. Nevertheless, the State may not hide
behind the law and not disclose the expert witnesses who are prepared to testify in
rebuttal. For these reasons, we hold that article 39.14(b)’s duty to disclose expert
witnesses includes rebuttal witnesses.
          We are aware of the line of cases holding the State is not bound to disclose
witnesses to rebut an unforeseen defensive theory. Doyle v. State, 875 S.W.2d 21, 22
(Tex. App.--Tyler 1994, no pet.) (holding it is not reasonable for the State to anticipate
needing undisclosed witness to rebut defense testimony that it could not foresee). 
However, the State cannot successfully rely on those cases in the instant case because
appellant disclosed Dr. Booker as his expert witness. Therefore, the defensive theory
could not have been “unforeseen.”
          Accordingly, we hold the State was not excused from its duty to disclose Dr. Rose
merely because he was a rebuttal witness.
2. Time for Disclosure.
          We now consider the State’s argument that there simply was no time for the
disclosure of Dr. Rose. Appellant was the final witness on December 16, 2002. The next
morning, the defense continued with its case-in-chief by calling a medical records
custodian and Booker. At the conclusion of Booker’s testimony, the defense rested, and
the State immediately called Dr. Rose. During the colloquy following appellant’s objection
to the nondisclosure of Dr. Rose, one prosecutor stated: 
We didn’t even know that [Dr. Rose] existed until yesterday when [appellant]
took the stand and said that he had tried to have another urine test in
Calallen. I found through calls and calls and calls and calls that there was
one, and I went at 7:00 o’clock and got everything done and everything taken
care of. We didn’t know this person existed until [appellant] took the stand. 
There’s no way we could have known.

We accept at face value that the State was not aware of appellant’s relationship with Dr.
Rose, and his clinic, until appellant testified. Consequently, we find the State was unaware
of Dr. Rose at the time its “State’s Notice of Expert Witnesses” was filed, and could not
have disclosed Dr. Rose as a potential witness before appellant testified. However, we
also accept at face value that the State upon becoming aware of Dr. Rose, contacted him,
and concluded that he would be a witness in rebuttal, but never disclosed Dr. Rose’s
identity to appellant.
          The State has a continuing burden of disclosure after the trial judge grants the
defendant’s request for witnesses. Crane v. State, 786 S.W.2d 338, 348 (Tex. Crim. App.
1990) (“[T]he State has a continuing burden of disclosure once a motion for discovery has
been granted.”) (citing Granviel v. State, 552 S.W.2d 107, 119 (Tex. Crim. App. 1977)).
Under this continuing burden, the State should notify opposing counsel immediately that
an additional witness had surfaced who conceivably could be called to testify. Hernandez
v. State, 819 S.W.2d 806, 8160 (Tex. Crim. App. 1991). Therefore, the State was under
a duty to disclose Dr. Rose when the State determined he would be a possible rebuttal
witness. Consequently, we hold the State was not excused from its duty to disclose Dr.
Rose merely because he was not discovered until the night before his testimony.
D. Abuse of Discretion.
          When the trial judge grants a motion for discovery, and the prosecution fails to
disclose the evidence ordered disclosed by the trial judge, that evidence should not be
admitted into evidence by the State during the trial. Lindley v. State, 635 S.W.2d 541, 543
(Tex. Crim. App. 1982). If a trial court allows an unlisted witness to testify over objection,
the decision is reviewed for an abuse of discretion. Martinez v. State, 867 S.W.2d 30, 39
(Tex. Crim. App. 1993); Stoker, 788 S.W.2d at 15; Hardin v. State, 20 S.W.3d 84, 88 (Tex.
App.--Texarkana 2000, pet. ref'd). Among the factors to be considered by an appellate
court are any showing by the defendant of bad faith on the part of the prosecution in failing
to disclose, and whether the defendant could have reasonably anticipated that the witness
would testify despite the State's nondisclosure. Castaneda v. State, 28 S.W.3d 216, 223
(Tex. App.–El Paso 2001, pet. ref’d) (citing Stoker, 788 S.W.2d at 15). Unless the
defendant makes the necessary showing, the trial court's decision to allow the testimony
will not be disturbed on appeal. Id.
          In determining whether the State acted in bad faith in failing to provide the name of
the witness, we consider whether the State intended to deceive, whether the State's notice
left adequate time to prepare, and whether the State freely provided the defense with
information. Hardin, 20 S.W.3d at 88; see Stoker, 788 S.W.2d at 15. In the instant case,
the State became aware of Dr. Rose at 7:00 p.m. the night before he testified. However,
the State never disclosed Dr. Rose’s identity despite its continuing burden to do so. 
Instead of disclosing Dr. Rose, the State waited until the optimum time to call him as a
witness -- immediately after Dr. Booker when appellant had no time to prepare for Dr.
Rose’s testimony. This indicates an intent to deceive. Furthermore, we note that even
though appellant disclosed Dr. Booker to the State, the State made no effort prior to trial
to contact Dr. Booker to determine the substance of his testimony.


 The State cannot use
its lack of due diligence as a subterfuge to escape its duty to disclose witnesses. Under
these circumstances, we hold the State acted in bad faith.
          We now turn to whether defense counsel could not have reasonably anticipated Dr.
Rose's testimony. This is "only a factor to be considered and is not determinative of
whether the trial court abused its discretion." Doherty v. State, 892 S.W.2d 13, 18 (Tex.
App.–Houston [1st Dist.] 1994, pet. ref'd) (citing Stoker, 788 S.W.2d at 15). During Dr.
Rose’s testimony, the State introduced appellant’s medical records which showed that
appellant successfully submitted a urine sample, and that sample tested negative for
benzodiazepines. Attached to those medical records was a “medical records release”
executed by appellant permitting defense to review these records. Dr. Rose testified that
the records were released to defense counsel prior to trial.


 This testimony regarding
appellant’s ability to provide a urine sample was only relevant because the appellant and
his brother testified on direct examination that appellant was unable to provide a urine
sample. As soon as this testimony was submitted, appellant should have anticipated that
someone from the Calallen Minor Emergency Clinic would testify since the medical records
from that facility showed appellant was able to provide a urine sample.


 In other words,
this testimony could have been anticipated even before Dr. Booker testified. After Dr.
Booker testified, it should have been a foregone conclusion that someone from the
Calallen Minor Emergency Clinic would testify that the urine sample tested negative for
benzodiazepines.
          Additionally, we note that defense counsel could have requested a recess or
continuance had he needed additional time to prepare for Dr. Rose’s cross-examination.
Dockins v. State, 852 S.W.2d 50, 53 (Tex. App.–Texarkana 1993, pet. ref'd) (citing Stoker,
788 S.W.2d at 15). However, no such request was made.
          While we in no way condone the State’s breach of its duty to disclose Dr. Rose as
a witness, in light of the urine sample testimony being developed on direct examination by
defense counsel, and defense counsel’s prior knowledge of the medical records from the
Calallen Minor Emergency Clinic, we cannot conclude the trial judge abused his discretion
in permitting Dr. Rose to testify over appellant’s timely objection. Accordingly, the first point
of error is overruled.
II. Ineffective Assistance of Counsel.
          The second point of error contends defense counsel was ineffective for not calling
as a rebuttal witness the Calallen Minor Emergency Clinic nurse who administered to
appellant on December 30. Appellant contends the nurse’s testimony would have had the
dual effect of corroborating appellant’s testimony regarding his unsuccessful attempt to
provide a urine sample and impeaching Dr. Rose’s testimony.
A. Standard of Appellate Review.
          The right to the effective assistance of counsel is guaranteed by the Sixth and
Fourteenth Amendments to the United States Constitution, and article I, section 10 of the
Texas Constitution. The well-known two-prong standard of Strickland v. Washington, 466
U.S. 668, 684 (1984), is utilized when reviewing ineffective assistance of counsel claims. 
The reviewing court must first decide whether trial counsel's representation fell below an
objective standard of reasonableness under prevailing professional norms. See id. If
counsel's performance was deficient, the reviewing court must decide whether there is a
"reasonable probability" the result of the trial would have been different but for counsel's
deficient performance. Id. A reasonable probability is a "probability sufficient to undermine
confidence in the outcome." Id. at 694. Absent both showings, an appellate court cannot
conclude the conviction resulted from a breakdown in the adversarial process that renders
the result unreliable. Id. at 687; Ex parte Menchaca, 854 S.W.2d 128, 131 (Tex. Crim.
App. 1993); Boyd v. State, 811 S.W.2d 105, 109 (Tex. Crim. App. 1991).
          The defendant bears the burden of proving ineffective assistance of counsel by a
preponderance of the evidence. Jackson v. State, 973 S.W.2d 954, 956 (Tex. Crim. App.
1998). Allegations of ineffective assistance of counsel will be sustained only if they are
firmly founded and affirmatively demonstrated in the appellate record. McFarland v. State,
928 S.W.2d 482, 500 (Tex. Crim. App. 1996). When determining the validity of an
ineffective assistance of counsel claim, any judicial review must be highly deferential to trial
counsel and avoid the deleterious effects of hindsight. Ingham v. State, 679 S.W.2d 503,
509 (Tex. Crim. App. 1984). This deferential review begins with the strong presumption
that counsel's actions and decisions were reasonably professional and were motivated by
sound trial strategy. Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). 
Appellant has the burden of rebutting this presumption, and generally the record on direct
appeal will not be sufficient to show that counsel's representation was so deficient and so
lacking in tactical or strategic decision-making as to overcome the presumption that
counsel's conduct was reasonable and professional. Bone v. State, 77 S.W.3d 828, 833
(Tex. Crim. App. 2002); Thompson v. State, 9 S.W.3d 808, 813-14 (Tex. Crim. App. 1999)
(trial record generally not sufficient to establish an ineffective assistance of counsel claim).



B. Analysis.
          In the instant case, the testimony supporting this claim was developed at the motion
for new trial hearing. This is one of the appropriate methods of developing an ineffective
assistance of counsel claim for appellate review.
          At the motion hearing, both defense counsel testified they were aware of the 
Calallen Minor Emergency Clinic records prior to trial. Their defensive theory was to raise
the defense of involuntary intoxication through the testimony of Dr. Booker who analyzed
the blood sample provided by appellant, and to not rely on the urine sample provided to
the Calallen Minor Emergency Clinic nurse.
          After the rebuttal testimony of Dr. Rose, the defense recalled both Dr. Booker and
appellant. Appellant’s testimony was elicited to explain the discrepancy between his and
Dr. Rose’s testimony regarding the urine sample on December 30. Dr. Booker was called
to explain how the blood sample testing positive for benzodiazepines was, in fact,
consistent with the urine sample testing negative for benzodiazepines. Both defense
counsel testified at the motion for new trial hearing that they were aware of the nurse, but
made a strategic decision to not call her to rebut Dr. Rose’s testimony. Specifically, John
Gilmore described the nurse as a person “that we did contact and we did interview and
chose not to call her to court. Gilmore testified the nurse was not called because “she
would hurt us more than she would help us,” because “she would have rebutted part of
[appellant’s] testimony. When asked whether not calling the nurse as a witness was the
correct decision, Gilmore stated: “Based upon the information that I had at the time that
was the only decision to make.”


 Co-counsel, Michael Gordon, testified the nurse’s
“testimony would have been a real double-edged sword for us. And in retrospect I think
we did the right thing not calling her.” 
          The record adequately reflects the decision to call appellant and Dr. Booker as
rebuttal witnesses and not the Calallen Minor Emergency Clinic nurse was strategic. We
will not second guess that decision in light of the testimony from both defense counsel that
the testimony was a “double-edged sword” that could have hurt more than it helped.
Accordingly, the second point of error is overruled.
III. Hearsay.
          The third and final point of error contends the trial judge erred in admitting hearsay
through the testimony of Dr. Rose. The “hearsay” in question is a statement made by the
nurse at the the Calallen Minor Emergency Clinic to Dr. Rose. Specifically appellant
complains of the following statement: “And she told me that she remembers and that she
did the drug screen. I asked her when she did it, she said she did it that night. I asked her
anything unusual about it, she said that it was just a standard drug screen.” The State
responds the evidence was admissible under Texas Rule of Evidence 703. We agree.
          Rule 703 provides:
The facts or data in the particular case upon which an expert bases an
opinion or inference may be those perceived by or reviewed by the expert at
or before the hearing. If of a type reasonably relied upon by experts in the
particular field in forming opinions or inferences upon the subject, the facts
or data need not be admissible in evidence.

Tex. R. Civ. Evid. 703 (emphasis added).
          Rule 703 allows the expert to offer an opinion formed after reviewing facts and/or
data, whether that information would be admissible or not. See id. In the instant case, we
find Dr. Rose’s expert testimony was based, at least in part, on the fact that there was
nothing unusual about appellant’s drug screen.


 Accordingly, the third point of error is
overruled.
          The judgment of the trial court is affirmed.
 
 
 

                                                                                      CHARLES BAIRD,
                                                                                      Justice

Publish.
Tex. R. App. P. 47.2(b).
Opinion delivered and filed
this 19th day of August, 2004.