**Affirmed as Reformed and Memorandum Opinion filed December 20, 2011.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-10-00926-CR

---

**ALBERT PALOMINO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1228095**

---

## MEMORANDUM OPINION

Appellant Albert Palomino appeals his conviction of aggravated assault with a deadly weapon under the law of parties, challenging the legal and factual sufficiency of the evidence to support the judgment, the trial court's denial of his motion for mistrial, the admissibility of testimony of a fingerprint expert, and claiming that he was denied effective assistance of counsel. Concluding that appellant's issues have no merit, but reforming the trial court's judgment as requested to reflect the enhancement paragraphs as alleged in the indictment, we affirm the judgment as reformed.

## FACTUAL AND PROCEDURAL BACKGROUND

Appellant was charged by indictment with the offense of aggravated assault with a deadly weapon to which he pleaded "not guilty." The indictment contained two enhancement paragraphs alleging two prior felony convictions, to which appellant pleaded "not true."

Evidence at trial reflects that law enforcement officers were dispatched to the apartment of complainant Myron Johnson in response to a call for a cutting that already had occurred. At the scene, one officer observed Johnson, who was being treated by medical emergency personnel. Investigating officers followed a trail of blood leading from Johnson's apartment to the nearby apartment of appellant, who was Johnson's good friend. At appellant's home, officers encountered appellant's son attempting to stop bleeding from a cut on his hand. The son claimed to have injured his hand while barbecuing. The son was taken into custody. Appellant was not at his home when the officers first arrived.

At appellant's home, investigators observed signs of a struggle and blood on appellant's back patio. The patio floor was damp. The officers also saw blood on a fence. They recovered a steak knife, bloodied on the tip, on a porch swing along with bloodied clothing, which may have belonged to appellant's son. Investigating officers spoke with several witnesses and observed a trail of blood leading from appellant's residence to a nearby park. According to the officers, appellant, who arrived at the home during the investigation, had no noticeable cuts, wounds, or injuries or blood on his clothing. When appellant arrived at the home, officers handcuffed him and placed him under arrest.

According to the undisputed facts, Johnson had arrived at appellant's apartment earlier in the afternoon, and the two men, along with appellant's adult son, consumed beer for five or six hours. Johnson and appellant's son left the home to purchase more

beer, and returned to the home to find appellant's brother. The four men consumed more beer outside of the home.

The facts are disputed as to why or how the ensuing conflict developed. According to Johnson, when he attempted to leave, appellant instructed his brother and son to surround Johnson and block Johnson from going inside the home to retrieve beer from the refrigerator. Johnson testified that appellant pushed him into a corner of the back patio, where appellant, along with appellant's brother and son, stabbed Johnson with knives. Johnson described appellant and the son "jugging"[1] him in the stomach. According to Johnson, at some point, appellant's son and brother went inside the home and appellant, alone, began "jugging" Johnson in the neck, threatening to kill him. As Johnson attempted to flee, appellant's son, at appellant's command, chased Johnson with a baseball bat, hitting Johnson on the head multiple times. Johnson escaped over a fence to his nearby home and called authorities. Johnson suffered twenty-two stab wounds in his stomach and neck. Johnson denied knowing what triggered the events of the evening.

Appellant testified that the men were on the front patio when Johnson made an obscene comment about appellant's minor daughter, who was in the home at the time. Appellant claimed to have struck Johnson in the chest, causing Johnson to fall back in his chair. According to appellant, Johnson apologized and blamed his statement on narcotics, which he had attempted to sell to appellant and which apparently had affected Johnson's faculties. Appellant claimed that the men continued to consume alcohol, but appellant later asked Johnson to leave. Johnson asked to use appellant's restroom, but appellant claimed to have seen Johnson instead attempting to open the door to appellant's daughter's bedroom. According to appellant, he struck Johnson and instructed his son to help Johnson leave the residence. Appellant, claiming to be very angry, left the residence and went for a half-mile walk within the apartment complex. Upon his arrival home, he saw law enforcement officers, who placed him in custody. Appellant denied stabbing

---

[1] Johnson described the action of "jugging" as a forward motion. Later, on cross-examination, Johnson clarified that "jugging" meant "stabbing."

Johnson at all that evening and testified that his daughter, who told investigators that she saw the incident from her bedroom window, was mistaken when she claims to have seen him on the back patio with Johnson. Appellant also claimed to suffer from muscular dystrophy, which affects his ability to climb stairs and generally weakens his muscles.

Officers spoke with appellant's minor daughter and two of her friends, all of whom were inside the home at the time of the incident. According to the daughter's testimony at trial, she heard her father, uncle, and brother arguing with Johnson outside on the back patio. From her bedroom window that overlooks the back patio, the daughter observed her father standing on the back patio and heard Johnson simultaneously plead, "Stop" and "Don't kill me." The daughter claimed next to have opened her bedroom door to let her dog inside her room; at this time she saw her brother, who instructed her to remain in her room.

Officers also spoke with appellant's neighbor, who lives above appellant in the apartment next door. At trial, the neighbor testified that she observed from her balcony appellant and another man on the back patio standing and a third man, who was in a chair that had flipped over on the ground. The neighbor learned from her daughter that a fight had broken out in which a person at appellant's home was being hit with a baseball bat and later dragged to the side of the building. The neighbor then observed from her balcony appellant, wearing a white shirt that was stained red, hosing down his patio. The neighbor admitted on cross-examination that she could not be sure whether she saw appellant or his son, as she previously had reported to investigators, hosing down the patio.

After the trial court instructed the jury of the charges against appellant as a principal and as a party, the jury found appellant guilty as charged. The trial court found each of the two enhancement paragraphs to be true and made an affirmative finding of the use of a deadly weapon in the commission of the offense. The trial court sentenced appellant to forty years' confinement.

ANALYSIS

**Is the evidence sufficient to support the trial court's judgment?**

In appellant's first issue, he challenges the legal and factual sufficiency of the evidence to support the jury's verdict that he committed the offense of aggravated assault with a deadly weapon or as a party to that offense. In evaluating a legal-sufficiency challenge, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The trier of fact "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The trier of fact may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the trier of fact resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A majority of the judges of the Texas Court of Criminal Appeals have determined that "the *Jackson v. Virginia* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt." *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) (plurality op.) (Hervey, J., joined by Keller, P.J., Keasler, and Cochran, J.J.); *id.* at 912–15 (Cochran, J., concurring, joined by Womack, J.) (same conclusion as plurality). Therefore, in this case

we review the evidence under the *Jackson v. Virginia* standard. We do not separately refer to legal or factual sufficiency.

A person commits the offense of assault if that person intentionally, knowingly, or recklessly causes bodily injury to another. Tex. Penal Code Ann. § 22.01(a) (1) (West 2011). The offense becomes aggravated assault if the person committing the assault uses a deadly weapon during the commission of the offense. *Id.* § 22.02(a)(2) (West 2011). A deadly weapon is anything that in the manner of its use or intended use is capable of causing death or serious bodily injury. *Id.* § 1.07(a)(17) (West 2011).

Johnson testified multiple times that appellant, either alone or in concert with his brother and son, stabbed him. Appellant claims that the only evidence of his involvement came from Johnson, whose testimony appellant characterizes as wholly contradictory and inconclusive. Appellant refers to Johnson as being intoxicated on the night of the offense and, despite Johnson's denials, having taken narcotics that had affected his faculties.[2] Although Johnson admitted to being intoxicated at the time of the incident, the record does not reflect that Johnson was unable to identify his friend as one of the people who stabbed him. The jury was free to believe Johnson's testimony and to disbelieve appellant's testimony, and similarly, the jury was free to accept portions of witnesses' testimony and to reject other portions. *See Bowden v. State*, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Evidence can be sufficient when it is based on the testimony of a single eyewitness. *Id.*

But, appellant's daughter and neighbor also offered eyewitness-testimony of the events, which served to corroborate Johnson's testimony. Appellant's daughter testified that she observed appellant on the patio with Johnson as Johnson pleaded for his life, despite appellant's claims of not having been present when Johnson was stabbed. The

---

[2] Appellant claims in his appellate brief that Johnson's medical records reflect that Johnson had opiates in his blood stream. Appellant has not cited to any one place in over 150 pages of Johnson's medical records in support of this claim. An appellate brief must contain clear and concise argument with appropriate citations to authorities and to the record. Tex. R. App. P. 38.1(i). Appellant has not met this statement in briefing this point.

6

daughter also corroborated Johnson's testimony that appellant was alone on the back patio with Johnson. (The daughter testified to seeing her brother inside the home when the brother instructed her to stay in her room.) The record does not reflect that appellant's daughter had any difficulty identifying appellant on the patio, despite appellant's testimony that she was mistaken in her identification of him. The neighbor's testimony similarly corroborates Johnson's account, noting that she observed appellant and another man on the back patio along with a man who had fallen back in his chair and that she learned of a man at appellant's home being beaten with a baseball bat.

Appellant points to the following evidence that he claims supports his sufficiency challenge:

- No blood was found inside the home even though Johnson testified to entering the home after being stabbed.
- The knife recovered from the scene was never traced to appellant through forensic testing or fingerprints or proven to be associated with the events in question.
- Investigators did not compare DNA or swab the blood found at the scene.
- One responding officer did not speak with witnesses and another officer saw appellant arrive at the residence after the offense had occurred.
- The bloody clothing was not traced to appellant.
- Appellant appeared to have no wounds or injuries.
- Appellant was arrested based on eyewitness testimony without speaking to the complainant.
- No officers ruled out a barbequing accident when appellant's son claimed to have injured himself while using the barbeque grill.

None of the evidence above, on which appellant relies for his argument, addresses the elements of the charged offense; rather, based on the above evidence, appellant seeks to have this court reweigh credibility determinations of the jury, which this court cannot do. *See Fuentes*, 991 S.W.2d at 271 (referring to the trier-of-fact as "the sole judge of the credibility of the witnesses and of the strength of the evidence"). In viewing the evidence in a light most favorable to the verdict, a rational trier of fact could have found the essential elements of the charged offense beyond a reasonable doubt. *See* Tex. Penal

7

Code Ann. § 22.02(a)(2). The evidence is sufficient to support the trial court's judgment.[3] We therefore overrule appellant's first issue.

**Did the trial court err in overruling appellant's motion for mistrial?**

In his second issue, appellant asserts the trial court improperly overruled his motion for mistrial during the guilt/innocence phase when the State attempted to elicit testimony from appellant's daughter in the following exchange:

> Q: [Prosecutor] Later that evening when the police came to your house, do you remember somebody who looked like Myron Johnson's grandmother? Do you remember her coming to the house?
>
> A: [Appellant's daughter] Yes, I do.
>
> Q: Do you remember talking to her?
>
> A: No.
>
> Q: Okay. So, at no point did you tell her about what you had seen that evening?
>
> A: No.
>
> Q: Never told her about your father or brother admitting to stabbing—
>
> > Defense Counsel: Objection, your Honor.
> >
> > Trial Court: Sustained.
> >
> > Defense Counsel: Your Honor, as to strike. And actually at this point, move for mistrial.
> >
> > Trial Court: The jury will be instructed to disregard the last comments made by—the last start of a question made by the prosecutor. What the lawyers ask is not evidence. So, you're instructed to disregard that. Your motion for mistrial will be overruled.

Following this exchange, the daughter testified that she had not spoken with Johnson's grandmother and had not ever spoken with appellant or her brother about the event.

---

[3] Because the evidence is sufficient to support appellant's conviction as a principal actor, we need not consider the sufficiency of the evidence to support his conviction as a party to the offense. *See Rabbani v. State*, 847 S.W.2d 555, 558 (Tex. Crim. App. 1992).

We review a trial court's ruling to grant or deny a motion for mistrial under an abuse-of-discretion standard. *Webb v. State*, 232 S.W.3d 109, 112 (Tex. Crim. App. 2007). Under this standard, we view the evidence in the light most favorable to the trial court's ruling and uphold the ruling if it falls within the zone of reasonable disagreement. *Id.* A reviewing court cannot substitute its judgment for that of the trial court. *Id.* Rather, a reviewing court decides whether the trial court's decision was arbitrary or unreasonable. *Id.* Under this standard, a trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *See id.*

A reviewing court balances the following three factors in determining whether a mistrial was warranted: (1) the severity of the misconduct, (2) the measures adopted to cure the conduct, and (3) the certainty of conviction absent the misconduct. *See Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (applying factors articulated in *Moseley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

The prosecutor attempted to elicit evidence that appellant had admitted to stabbing Johnson; but, the trial court instructed the jury to disregard the prosecutor's improper question, and explained to the jury that questions posed by the lawyers are not evidence. Asking an improper question seldom calls for a mistrial because, in most cases, any harm can be cured by an instruction to disregard. *See Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000); *Patterson v. State*, 138 S.W.3d 643, 651 (Tex. App.—Dallas 2004, no pet.). In the absence of evidence to the contrary, we presume that the jury complied with the trial court's instruction to disregard the question. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Kack v. State*, 287 S.W.3d 497, 509 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Additionally, in this case, the prosecutor's question went unanswered by the witness. *See Patterson*, 138 S.W.3d at 651. Based on this appellate record, the trial court did not abuse its discretion in denying appellant's motion for mistrial. *See id.* We overrule appellant's second issue.

**Did the trial court err in admitting the testimony of a fingerprint expert whose identity had not been disclosed to the defense prior to trial?**

In appellant's third issue, he claims that the trial court erred in admitting the testimony of the State's fingerprint expert whose identity had not been disclosed by the State before trial. During the punishment phase of trial, the State called a fingerprint expert to testify. Over appellant's objection, the expert testified that the fingerprints contained in two pen packets, which were associated with appellant's prior felonies and used for enhancement, belonged to appellant. The decision to allow a witness who was not listed on the State's witness list to testify is a matter within the trial court's discretion. *See Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993).

Article 39.14(b) of the Code of Criminal Procedure, entitled, "Discovery," provides in relevant part,

> On motion of a party and on notice to the other parties, the court in which an action is pending may order one or more of the other parties to disclose to the party making the motion the name and address of each person the other party may use at trial to present evidence under Rules 702, 703, and 705, Texas Rules of Evidence. The court shall specify in the order the time and manner in which the other party must make the disclosure to the moving party, but in specifying the time in which the other party shall make disclosure the court shall require the other party to make the disclosure not later than the 20th day before the date trial begins.

Tex. Code Crim. Proc. Ann. art. 39.14(b) (West Supp. 2011).

According to the record, on April 30, 2010, the State voluntarily disclosed in a filed document that "no experts" would be called. About six weeks later, on June 14, 2010, appellant's trial counsel filed a motion to compel the State to disclose expert witnesses. A trial court has discretion to order the disclosure of the names of experts on the motion of a party. *See id.*; *Quinones v. State*, 592 S.W.2d 933, 940 (Tex. Crim. App. 1980) (providing that the trial court has discretion to order discovery pursuant to article 39.14). The trial court did not rule on appellant's motion to compel. A party must procure a ruling from the trial court on a motion to disclose expert witnesses in order to

10

preserve error. *See Harris v. State*, 287 S.W.3d 785, 792 (Tex. App.—Houston [1st Dist.], 2009 no pet.), *abrogated on other grounds by*, *Barrios v. State*, 283 S.W.3d 348 (Tex. Crim. App. 2009). Appellant has not preserved error because he did not obtain a ruling or a refusal to rule from the trial court on his motion to disclose witnesses. *See id.* Appellant argues that *Harris v. State* is factually dissimilar because in the case under review, unlike the *Harris* case, the State voluntarily disclosed that no experts would testify. *See Harris*, 287 S.W.3d at 792 (providing that the State notified the accused of two experts, but not a third expert who testified). These dissimilarities are of no moment given that (1) in both cases, the State failed to disclose the complained-of expert witness, and (2) in both cases, the accused parties did not preserve error by procuring a ruling or refusal to rule from the trial court on any motion to disclose experts. *See Harris*, 287 S.W.3d at 792. But, even if appellant had not waived this point by failing to preserve error, we would find no merit in it.

The decision to allow a witness that was not on the State's witness list to testify is a matter within the trial court's discretion. *See Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993). A reviewing court considers whether the State acted in bad faith and whether the accused could have anticipated the witness's testimony in determining whether the trial court erred in allowing testimony from a witness not identified on the State's witness list. *See id.* The record does not suggest that the prosecutor acted in bad faith. *See Irvine v. State*, 857 S.W.2d 920, 927 (Tex. App.—Houston [1st Dist.] 1993, pet. ref'd). The record reflects that the State effected the issuance of two different subpoenas, filed respectively on June 3, 2010, and August 25, 2010, each of which listed "HCSO Fingerprint Expert" as a witness the State intended to call for the September 21, 2010 trial. Appellant did not dispute at trial that his trial counsel received a copy of the subpoenas, and appellant does not dispute this claim on appeal. Moreover, the allegations in the two enhancement paragraphs were set forth clearly in the indictment, and appellant should have anticipated the possibility that a fingerprint expert would testify in order to prove up the enhancements. *See id.* Therefore, appellant should have

anticipated that the State would call this expert witness to prove up the prior convictions for enhancement purposes. *See id.* To the extent appellant claims that he should have been able to rely on the State's voluntary disclosure of "no experts" that was filed in April 2010, appellant's argument is belied by his trial counsel's conduct in filing the motion to disclose experts two months later, upon which appellant did not procure a ruling from the trial court. Likewise, the State's notice of "no experts" was not in response to appellant's request for notice. *See Harris*, 287 S.W.3d at 793 (distinguishing *Depena v. State*, 148 S.W.3d 461 (Tex. App.—Corpus Christi 2004, no pet.) on similar basis). The trial court did not abuse its discretion in allowing the expert's testimony. *See Irvine*, 857 S.W.2d at 927. We overrule appellant's third issue.

**Did appellant receive ineffective assistance of counsel?**

In his fourth issue, appellant claims to have received ineffective assistance of counsel, based on counsel's (1) failure to conduct voir dire on the law of parties, (2) failure to secure the trial court's order for the disclosure of the State's expert witnesses, (3) failure to obtain and submit appellant's medical records reflecting that appellant suffered from muscular dystrophy, and (4) failure, during the guilt/innocence phase, to seek a medical expert witness to testify about appellant's medical condition, evidence appellant claims would have served as mitigating evidence in the punishment phase.

Both the United States and Texas Constitutions guarantee an accused the right to assistance of counsel. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; Tex. Code Crim. Proc. art. 1.051 (West 2005). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prove ineffective assistance of counsel, appellant must show that (1) trial counsel's representation fell below an objective standard of reasonableness, based on prevailing professional norms; and (2) there is a reasonable probability that the result of the proceeding would have been different but for trial counsel's deficient performance.

12

*Strickland*, 466 U.S. at 688–92. Moreover, appellant bears the burden of proving his claims by a preponderance of the evidence. *Jackson v. State*, 973 S.W.2d 954, 956 (Tex. Crim. App. 1998).

In assessing appellant's claims, we apply a strong presumption that trial counsel was competent. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). We presume counsel's actions and decisions were reasonably professional and were motivated by sound trial strategy. *See Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). When, as in this case, there is no proper evidentiary record developed at a hearing on a motion for new trial, it is extremely difficult to show that trial counsel's performance was deficient. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). If there is no hearing or if counsel does not appear at the hearing, an affidavit from trial counsel becomes almost vital to the success of an ineffective-assistance claim. *Stults v. State*, 23 S.W.3d 198, 208–09 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd). The Court of Criminal Appeals has stated that it should be a rare case in which an appellate court finds ineffective assistance on a record that is silent as to counsel's trial strategy. *See Andrews*, 159 S.W.3d 98, 103 (Tex. Crim. App. 2005). On such a silent record, this court can find ineffective assistance of counsel only if the challenged conduct was "'so outrageous that no competent attorney would have engaged in it.'" *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001)).

### *Alleged Failure to Conduct Voir Dire on the Law of Parties*

The record reflects that the State questioned the venire panel about the law of parties and, at one point, the trial court provided a hypothetical to illustrate a conviction under the law of parties. Trial counsel's failure to conduct voir dire on the law of parties may be deemed reasonable trial strategy if that topic, as in this case, had been adequately covered by the State or the trial court during voir dire. *See Goodspeed*, 187 S.W.3d at 392–93; *Williams v. State*, 970 S.W.2d 182, 184 (Tex. App.—Houston [14th Dist.] 1998,

13

pet. ref'd). Appellant therefore has failed to show that his trial counsel's performance was deficient or that the outcome of trial would have differed had his trial counsel questioned the venire panel on the law of parties. *See Williams*, 970 S.W.2d at 184.

### Alleged Failure to Obtain a Ruling on Appellant's Motion to Disclose Experts

Appellant claims his trial counsel was obligated to obtain a ruling on his motion to disclose experts under article 39.14(b) of the Texas Code of Criminal Procedure. According to the record, trial counsel acknowledged that she relied upon the State's voluntary disclosure that "no experts" would be called, and consequently did not procure a ruling on appellant's subsequent motion to disclose experts. The fact that such a strategy was unsuccessful does not necessarily mean that trial counsel's strategy was not reasonable. *See, e.g.*, *Baber v. State*, 931 S.W.2d 359, 362 (Tex. App.—Amarillo 1996, pet. ref'd). In examining the totality of counsel's representation for ineffective assistance, we will not second-guess in hindsight the effectiveness of counsel's strategy at trial. *See Hawkins v. State*, 660 S.W.2d 65, 75 (Tex. Crim. App. 1983).

In light of our conclusion that the trial court did not err in allowing the fingerprint expert to testify, appellant has not demonstrated that the absence of a ruling on his motion would have resulted in a different outcome at punishment. *See Rosas v. State*, 636 S.W.2d 729, 732 (Tex. App.—Corpus Christi 1982, no pet.) (concluding that an accused did not suffer harm from trial counsel's failure to obtain a ruling on pre-trial discovery motion under article 39.14, and determining that counsel did not render ineffective assistance). Thus, appellant has not satisfied the second prong of *Strickland*.

### Alleged Failure to Obtain or Present Evidence of Appellant's Medical Condition

Appellant claimed at trial to have suffered from muscular dystrophy, but he asserts on appeal that his trial counsel rendered ineffective assistance by failing to procure his medical records or obtain a medical expert to provide credible evidence that he was physically unable to commit the charged offense. Appellant claims that such evidence would have served as mitigating evidence in the punishment phase.

14

At trial, appellant and his daughter both testified that appellant suffers from muscular dystrophy. According to the record, although appellant can move around, appellant has difficulty climbing stairs and suffers from general weakness in his muscles. By appellant's own admission, however, he had no difficulty walking half a mile or striking Johnson in the chest after consuming many beers on the night of the incident. Furthermore, appellant has not demonstrated that a medical expert was available and would have testified or that evidence about appellant's medical condition, had it been admitted, would have been beneficial in light of the testimony from appellant and his daughter as to his capabilities. Without such a showing, we cannot conclude that trial counsel rendered ineffective assistance. *See King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1986); *Nwosoucha v. State*, 325 S.W.3d 816, 830 (Tex. App.—Houston [14th Dist.] 2010, pet. stricken).

Appellant has failed to satisfy the requirements of *Strickland* to support his claim for ineffective assistance. We overrule appellant's fourth issue.

### Reformation of the Trial Court's Judgment

Appellant additionally requests this court to reform the trial court's judgment to accurately reflect the two enhancements alleged in the indictment and the findings on those enhancements at punishment. The State makes no objection to this request.

The record reflects that the charged offense was enhanced with two prior convictions and the trial court's finding of "true" as to the enhancements; but, the trial court's judgment does not reflect this finding. Consequently, we find merit in appellant's argument for reformation. *See French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992); *Cobb v. State*, 95 S.W.3d 664, 668 (Tex. App.—Houston [1st Dist.] 2002, no pet.). Accordingly, we reform the trial court's judgment to reflect that the indictment alleged two enhancement paragraphs for felony convictions, to which appellant pleaded "not true," and the trial court found to be true.

15

As reformed, the trial court's judgment is affirmed.

/s/      Kem Thompson Frost
            Justice

Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).