

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-23-00168-CR

MARIA ALICIA GENOVESI, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 198th District Court
Kerr County, Texas
Trial Court No. B22467

Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Justice Rambin

## MEMORANDUM OPINION

A Kerr County jury found that Maria Alicia Genovesi threatened to commit a mass shooting at a local church and convicted her of terroristic threat, a third-degree felony. *See* TEX. PENAL CODE ANN. § 22.07(e). After she pled true to the State's punishment-enhancement allegation, the jury assessed a sentence of four years' imprisonment. On appeal, Genovesi argues that the trial court erred by allowing an undisclosed witness to testify and by denying her motion for new trial without a hearing.[1]

We find no abuse of discretion in the trial court's decisions to allow testimony by the State's rebuttal witness and to overrule the motion for new trial without a hearing. As a result, we overrule Genovesi's points of error. Even so, we must modify the trial court's judgment to reflect the proper degree of offense. As modified, we affirm the trial court's judgment.

## I. Allowing Testimony by the State's Rebuttal Witness Was Not an Abuse of Discretion

In her first point of error, Genovesi argues that the trial court erred by allowing the State's undisclosed witness, Greg Longenbaugh, an investigator with the Kerr County Sheriff's Office (KCSO), to rebut her defense theory. We find no abuse of discretion in the trial court's ruling.

### A. Standard of Review and Relevant Caselaw

Article 39.14(b) of the Texas Code of Criminal Procedure provides that, in general and upon request, the State must provide the defendant with "the name and address of each person

---

[1]Originally appealed to the Fourth Court of Appeals, this case was transferred to this Court by the Texas Supreme Court pursuant to its docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.). We follow the precedent of the Fourth Court of Appeals in deciding this case. *See* TEX. R. APP. P. 41.3.

the disclosing party may use at trial to present evidence." TEX. CODE CRIM. PROC. ANN. art. 39.14(b) (Supp.); *see Martinez v. State*, 867 S.W.2d 30, 39 (Tex. Crim. App. 1993); *Martinez v. State*, 131 S.W.3d 22, 29 (Tex. App.—San Antonio 2003, no pet.). Although the debate on whether Article 39.14(b) applies to a rebuttal witness has not yet been settled by the Texas Court of Criminal Appeals, we assume its application for the purposes of this analysis. *See Depena v. State*, 148 S.W.3d 461, 465 (Tex. App.—Corpus Christi–Edinburg 2004, no pet.); *In re H.T.S.*, No. 04-11-00847-CV, 2012 WL 6743562, at *3 (Tex. App.—San Antonio Dec. 31, 2012, pet. denied) (mem. op.) (declining to decide the issue but finding no bad faith in the State's lack of disclosure "even if Article 39.14(b) applies to rebuttal witnesses").

If the trial court allows an undisclosed witness to testify, we review the decision for an abuse of discretion. *Martinez*, 867 S.W.2d at 39; *Martinez*, 131 S.W.3d at 29 (citing *Bridge v. State*, 726 S.W.2d 558, 566–67 (Tex. Crim. App. 1986)). During our analysis, we "answer two questions: (1) did the prosecutor act in bad faith by failing to disclose the names of the witnesses ahead of time; and (2) could the defendant reasonably anticipate that the witnesses would testify, although their names were not included on the witness list." *Martinez*, 131 S.W.3d at 29 (citing *Bridge*, 726 S.W.2d at 566–67).

### B. Factual and Procedural History

The evidence at trial showed that Genovesi's name was well known to the Kerrville Police Department (KPD) dispatchers in Kerr County. Francisco Galvan, public safety communications manager for the KPD, testified that "everybody in the dispatch circle there [was] familiar with the frequent calls from [Genovesi]." According to Galvan, the KPD received

3

calls from suicide prevention or crisis hotlines reporting on events related to Genovesi under "different aliases." Lauren Scarlett, a dispatcher for the KCSO, testified that she had prior similar calls relating to Genovesi, and Jeffrey Robitaille, an officer with the KPD, testified that he had been dispatched as a result of previous calls related to Genovesi. Robitaille also testified that Genovesi "had access to weapons based on previous calls that dispatch looked at."

The calls forming the basis of the offense in this case occurred on May 29, 2022, when two people assisting the Suicide Crisis Hotline called the KPD and the KCSO to report a threat. The callers both stated that they flagged an online "chatter" who claimed to be suicidal, had "homicidal ideation towards two local churches," and was on the way to the churches with a shotgun. Both callers provided the chatter's IP address and mentioned other identifying information, including two phone numbers given by the chatter and a statement that the chatter lived at the end of Lafayette Road. Galvan testified that dispatchers had already associated a Lafayette Road address with Genovesi. The IP address was traced to Genovesi's place of business, which was owned by Brent Bates, Genovesi's foster father. Dispatchers used the phone numbers to trace the phone's physical location. One number belonged to Genovesi, who was located across the street from her work, and another phone number belonged to Bates. According to Robitaille, "Bates actually provided IP addresses and several other items, like his Wi-Fi router codes[,] to dispatchers with consent." Robitaille arrested Genovesi at Bates's office.

Genovesi's defensive theory, discussed during opening statements, argued "that IP addresses are easily spoofed" and that "[s]omebody -- almost assuredly [it was] her ex-

4

husband . . . ha[d] been spoofing her IP address, trying to make it look like she [was] texting a suicide hotline so that the police [would] come to her house and harass her." Lucas Flores, an investigator with the KCSO, testified that IP addresses and phone numbers could be spoofed but that "spoofing them both simultaneously . . . would take a level of. . . skill that [he had not] seen."

To support the defensive theory, Genovesi included call sheet reports dating back to 2018 showing that prior calls related to suicide attempts by Genovesi had turned out to be false. Those reports included notes from responders stating that Genovesi's ex-husband "[wa]s calling hotlines and 3rd parties to falsely report suspicious activity and welfare checks on [Genovesi] with the intent to harass or annoy [her]." Genovesi also introduced evidence showing that, on April 1, 2020, an IP address was traced to Genovesi's physical address and that officers were dispatched there, but Genovesi, who was alone, said she did not contact the Suicide Crisis Hotline.[2]

To rebut the defensive theory, the State called Longenbaugh. The State admitted that Longenbaugh was not named as a witness because the State had not anticipated the introduction of the defense exhibits relating to prior calls. In response to the State's argument that Longenbaugh's absence from the witness list was not due to bad faith, Genovesi clarified that she was not accusing the State of any bad faith. Even so, Genovesi objected to Longenbaugh's testimony, stating, "[W]e were given a document in our discovery portal that said prior reports,

---

[2]Genovesi does not contest the sufficiency of the evidence supporting her conviction. As a result, we only discuss the facts known to the trial court at the time it decided to admit Longenbaugh's testimony.

including reports of various other officers, and this witness was noticeably and glaringly absent from that." As a result, Genovesi argued that she did not have adequate time to prepare.

The trial court decided to send the jury to an early lunch break to provide Genovesi with an opportunity to hear Longenbaugh's testimony and conduct an examination outside of the jury's presence. The court then found no evidence of bad faith on the State's part and decided to permit Longenbaugh's testimony.

In front of the jury, Longenbaugh testified that he went to Genovesi's house after a "[p]hone call came into the suicide hotline that Ms. Genovesi allegedly consumed 28 unknown pills." Longenbaugh testified that he conducted a welfare check and that Genovesi had slurred speech, was groggy, but otherwise appeared fine.

During cross-examination, Genovesi established that Longenbaugh had no way to prove that Genovesi had ingested any pills, that Genovesi's slurred speech could have been the result of seizures she was known to have, and that there was no way to determine whether Genovesi had placed the calls to the suicide hotline.

### C. Analysis

Here, Genovesi cannot meet the first portion of the two-part test because she did not assert that the State acted in bad faith by failing to list Longenbaugh as a witness. Instead, she affirmatively stated that she was not "mak[ing] any accusations as to the first" portion of the test.

As for the second part of the test, the San Antonio Court of Appeals has

examined three areas of inquiry: (1) the degree of surprise to the defendant; (2) the degree of disadvantage inherent in that surprise (e.g., the defendant was aware of what the witness would say, or the witness testified about cumulative or uncontested issues); (3) the degree to which the trial court was able to remedy that

6

surprise (e.g., by granting the defense a recess, postponement, or continuance, or by ordering the State to provide the witness' criminal history).

*Id.* (citing *Hardin v. State*, 20 S.W.3d 84, 88 (Tex. App.—Texarkana 2000, pet. ref'd)). Here, while there may have been some surprise to Genovesi, it was alleviated when the trial court took a lunch break to allow Genovesi to hear the substance of Longenbaugh's testimony outside of the jury's presence. After, Genovesi did not argue that she needed additional time to prepare. *See Barnes v. State*, 876 S.W.2d 316, 328 (Tex. Crim. App. 1994) (per curiam) (finding that a claim of surprise over an undisclosed witness is harmless if a defendant fails to move for a continuance). Moreover, the record shows that Genovesi was able to adequately cross-examine Longenbaugh about the substance of his testimony.

We conclude the two-part test reveals that the trial court did not abuse its discretion by admitting Longenbaugh's testimony. As a result, we overrule Genovesi's first point of error.

## II. Deciding Against a Motion for New Trial Hearing Was Not an Abuse of Discretion

In her second point of error, Genovesi argues that the trial court erred by denying her motion for new trial based on juror disability without holding a hearing. Because we find that Genovesi's motion, and the affidavit supporting it, failed to show reasonable grounds to hold a hearing, we find no abuse of discretion in the trial court's decision to forego a hearing.

### A. Factual Background

Genovesi timely filed a motion for new trial based on discovery that a juror suffered "from a mental disability and brain damage due to a head injury." Genovesi's motion for new

trial was supported by the affidavit of Robert W. Carey, Jr.[3]  Carey said that he was at the Kerrville Elks Lodge when he met the juror, who said that he was discharged from the Navy "for medical reasons, with a permanent disability," after hitting his head against a submarine on numerous occasions and suffering a cardiac arrest.  According to Carey, the juror told him that, during his service, he suffered "brain damage and a permanent disability" and that cardiac "defibrillation caused him to be unable to think categorically and discern information necessary to be able to perform his duties onboard the nuclear submarine."  In a conclusory manner, Carey also opined that the juror "should have been disqualified for consideration as a juror."[4]

Genovesi argued in her motion that the juror was disabled and requested the trial court to conduct a hearing.  Without a hearing, the trial court denied the motion for new trial by written order.

## B.    Standard of Review and Applicable Law

"We review the trial court's denial of a hearing on a motion for new trial for abuse of discretion."  *Cyr*, 308 S.W.3d at 30 (citing *Smith v. State*, 286 S.W.3d 333, 339 (Tex. Crim. App. 2009)).  "[A] hearing on a motion for new trial . . . is not an absolute right."  *Id.* (citation omitted).   Rather, the movant must "establish[] the existence of 'reasonable grounds' showing that [s]he could be entitled to relief."  *Id.* (quoting *Smith*, 286 S.W.3d at 339).

Section 62.102 contains the general qualifications for jury service.  TEX. GOV'T CODE ANN. § 62.102.  Because being "of sound mind" is among the list of requirements for jury

---

[3]Carey described himself as a person who was part of Genovesi's "support network."

[4]"[A] motion for new trial . . . must be supported by the affidavit of . . . [someone] *who was in a position to know the facts*."  *Cyr v. State*, 308 S.W.3d 19, 30 (Tex. App.—San Antonio 2009, no pet.) (quoting *Baldonado v. State*, 745 S.W.2d 491, 493 (Tex. App.—Corpus Christi–Edinburg 1988, pet. ref'd)).

service, TEX. GOV'T CODE ANN. § 62.102(5), "[a] juror is absolutely disqualified only when it appears that he or she is insane," *Scaggs v. State*, 18 S.W.3d 277, 283 (Tex. App.—Austin 2000, pet. ref'd) (citing TEX. CODE CRIM. PROC. ANN. arts. 35.19, 35.16(a)(4)). Under Article 44.46,

> A conviction in a criminal case may be reversed on appeal on the ground that a juror in the case was *absolutely disqualified* from service under Article 35.19 of this code only if:
>
> (1)     the defendant raises the disqualification before the verdict is entered; or
>
> (2)     the disqualification was not discovered or brought to the attention of the trial court until after the verdict was entered and the defendant makes a showing of significant harm by the service of the disqualified juror.

TEX. CODE CRIM. PROC. ANN. art. 44.46 (emphasis added). Also, "[a]lthough not absolutely disqualified, a person who has a bodily or mental defect that would render them unfit for jury service may on voir dire be challenged for cause." *Scaggs*, 18 S.W.3d at 283 (citing TEX. CODE CRIM. PROC. ANN. art. 35.16(a)(5)).

### C.     Application

Carey's affidavit contained no facts suggesting that the juror was insane. Perhaps for that reason, Genovesi did not argue in her motion for new trial that the juror was absolutely disqualified from service. Instead, she argued that the juror was "disabled." Yet, Carey's affidavit did not say how long ago the juror had suffered a brain injury, what the brain injury was, or how it impacted the juror's life, if at all, following his medical discharge from the Navy. Further, even though Carey said the juror had suffered "brain damage *and* a permanent disability" (emphasis added), nothing showed that the brain injury, as opposed to some other medical condition, was permanent. A juror can become disabled by a "physical illness, mental

9

condition, or emotional state which hinders one's ability to perform one's duties as a juror." *Landrum v. State*, 788 S.W.2d 577, 579 (Tex. Crim. App. 1990) (per curiam). Although Carey's affidavit spoke to the juror's ability to perform on a nuclear submarine, it contained nothing suggesting that the juror was unable to perform his duties as a juror. In fact, he was elected by the other members of the jury to serve as the foreperson.

Simply put, Carey's affidavit failed to show "that the juror was absolutely disqualified or otherwise legally unqualified to serve as a juror." *Scaggs*, 18 S.W.3d at 283. As a result, the trial court was free to find that Genovesi's motion for new trial and affidavits failed to show reasonable grounds requiring the trial court to hold a hearing. *See id.* Accordingly, we hold that the trial court's decision to forego a hearing on Genovesi's motion for new trial was not an abuse of discretion.

### III. We Modify the Judgment to Reflect the Proper Degree of Offense

This Court has the power to "reform the judgment . . . [when] the necessary information is available for us to do so." *Rodriguez v. State*, 675 S.W.3d 54, 57 (Tex. App.—San Antonio 2023, no pet.) (citing TEX. R. APP. P. 43.2(b)); *see Bigley v. State*, 865 S.W.2d 26, 27 (Tex. Crim. App. 1993). "This authority to reform incorrect judgments is not dependent upon a party's request, nor does it depend on a party's objection at trial." *Williams v. State*, 911 S.W.2d 788, 791 (Tex. App.—San Antonio 1995, no pet.) (citing *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd)).

The State charged Genovesi with terroristic threat, which is a third-degree felony. TEX. PENAL CODE ANN. § 22.07(e). Under the heading "Degree of Offense," the judgment contains

10

the phrase "3RD DEGREE FELONY ENHANCED TO 2nd DEGREE FELONY." Although the State included a punishment enhancement allegation, it only allowed Genovesi to "be *punished* for a felony of the second degree." TEX. PENAL CODE ANN. § 12.42(a) (emphasis added). In other words, while the enhancement allegation was used to elevate Genovesi's punishment range, it did not change the classification of the underlying offense. *See id.*; *Ford v. State*, 334 S.W.3d 230, 234–35 (Tex. Crim. App. 2011); *State v. Rosseau*, 398 S.W.3d 769, 776 (Tex. App.—San Antonio 2011) (citing *Calton v. State*, 176 S.W.3d 231, 233 (Tex. Crim. App. 2005)), *aff'd*, 396 S.W.3d 550 (Tex. Crim. App. 2013). As a result, the judgment's recitation that Genovesi's degree of offense was a second-degree felony is incorrect, and we must modify the trial court's judgment to reflect the proper degree of offense.

## IV. Disposition

We modify the trial court's judgment to reflect that Genovesi was convicted of a third-degree felony. As modified, we affirm the trial court's judgment.

Jeff Rambin
Justice

Date Submitted:     February 7, 2024
Date Decided:       February 28, 2024

Do Not Publish

11